OPINION
The facts of this case are more fully detailed in our prior decision of this matter, Holzemer v. Urbanski (Apr. 18, 1997), Lucas App. No. L-96-261, unreported.
Appellant, Monica Urbanski Holzemer, and appellees, William G. and Jordan Urbanski, are the children of William A. Urbanski. The elder Urbanski died in 1995. However, shortly before his death, William A. Urbanski transferred the vast bulk of his assets into revocable trusts principally for the benefit of appellees. While appellant received an equal share of a pour over trust created with the decedent's remaining assets at death, she was excluded from any share of the inter vivos trusts. The total assets involved exceeded $1.2 million. The res of the pour over trust ultimately contained only $21,000 in property.
Michigan Attorney David A. Nowicki was named successor trustee in all of the trusts. Following William A. Urbanski's death, Nowicki opened independent probate proceedings in the Lenawee County, Michigan, Probate Court. Appellant and appellees all received proper notice of this action. Nowicki was named the estate's personal representative. Six months after opening the independent estate, Nowicki filed a notice of closing and a month later received a certificate of completion issued by the Register of the Michigan Probate Court and signed by a deputy clerk.
In 1996, appellant brought suit in the Lucas County Court of Common Pleas. Appellant alleged that certain deeds to and from William A. Urbanski were fraudulently obtained. Appellant sought to set aside the deeds and to invalidate the trusts created by Urbanski as having been made under duress. Appellant specifically accused appellees of conversion and interference with an expectancy. Appellees moved to dismiss appellant's suit pursuant to Civ.R. 12(B)(1), arguing that the trial court lacked jurisdiction to hear the case because it involved matters already adjudicated in the Michigan probate proceeding. The trial court granted appellees' motion and appellant appealed. On consideration, this court ruled that,
 "1) the Certificate of Completion issued by the Michigan probate court, does not divest the trial court of subject matter jurisdiction; 2) such a judgment is, however, entitled to full faith and credit in an Ohio court, and operates as res judicata to bar the relitigation in Ohio of issues that were or could have been raised in the Michigan probate proceeding; and 3) res judicata is an affirmative defense which may not be raised in a motion to dismiss." Holzemer v. Urbanski, supra, at 9.
On remand, appellees filed a Civ.R. 56 motion, arguing that the Michigan proceeding was a res judicata bar, since all the claims appellant raised were or could have been litigated in the Michigan proceedings. The trial court granted appellees' motion and appellant again appeals, raising the following assignment of error:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT."
Appellant devotes a substantial portion of her brief in an attempt to persuade this court that the Michigan independent probate procedure is not entitled to full faith and credit or in some other manner does not operate as a res judicata bar to Ohio proceedings on matters that were or might have been raised in the Michigan proceeding. These issues were considered and determined in our first opinion and will not be revisited here.
The question now at issue is how many, if any, of appellant's Ohio claims were or might have been raised in the Michigan independent probate proceeding.
Ohio has no exact equivalent of Michigan's independent probate scheme.[1] Enacted in 1979, its stated purpose is to proceed, "* * * as expeditiously as possible, without judicial intervention and without order, approval or other action of the court * * *." MCLA 700.357 (MSA 27.5357). As indicated in its purpose statement, supervision of an independent probate by the probate court is virtually nonexistent and contact with the court is minimal. See Draper, Independent Probate (July 1985), 64 Mich. Bar. J. 660, 661-662. Any interested party may file a verified petition with the court register seeking authority to initiate independent probate. 13 Mich. Pleading and Practice (1995), 201, 205, Independent Probate Administrations, Section 101A.01, 101A.02. Independent probate is granted on the register's satisfaction that the petitioner is qualified, venue is proper, no supervised probate proceeding has been initiated, and the decedent's will, if any, does not prohibit independent probate.Id. at section 101A.03; MCLA 700.307 (MSA 27.5307). Absent waiver, notice of the appointment of an independent personal representative must be provided to heirs, devisees, and any other interested party. 13 Mich. Pleading and Practice, supra, at 214, section 101A.12; MCLA 700.315 (MSA 27.5315).
Following appointment, the independent personal representative goes about the business of marshaling assets, settling claims and the like. The independent estate is then closed when the independent personal representative files a verified closing statement with the court and a certificate of completion is issued from the register. Id. at 233, 101A.39; Draper, supra, at 665. All of this proceeds without court intervention, unless an interested party petitions the court to assume partial or complete supervision of the estate. When the court grants such a request, the estate or that particular portion of it over which the interested parties seek supervision is treated exactly like an ordinary probate estate. Id. at 662.
This last feature is salient to our consideration. It is undisputed that appellant had actual notice of the Michigan independent probate, yet at no time attempted to convert this to a supervised proceeding for the purpose of contesting the independent personal representative's inventory (which appellant now asserts is deficient by more than $1.1 million due to appellees' purported misdealings with their father) or challenging the decedent's testamentary capacity (which appellant now asserts was lacking). This failure to request supervision, appellees argue, means that these issues (which form the foundation of appellant's claims) could have been raised in the Michigan proceeding and are now barred by the doctrine of res judicata.
It is not always clear what the doctrine of res judicata
encompasses. In Ohio, and elsewhere, the term has been used to mean both estoppel by judgment and collateral estoppel or, at times, is even differentiated from either of those concepts. Consequently, it has been stated that res judicata is estoppel by judgment, see, Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379,381, and is different from estoppel by judgment. State ex rel.Ohio Water Service Co. v. Mahoning Valley Sanitary Dist.,et al. (1959), 169 Ohio St. 31, 34. In order to avoid this inexactitude, the present preferred terminology is to speak in terms of claim preclusion and issue preclusion. See 1 Restatement of Laws 2d, Judgments (1982), Sections 17, Comments (a)-(c). In the present case, we are concerned with claims preclusion.
The rule as traditionally stated was that "A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction * * * is a complete bar to any subsequent action between the parties or those in privity with them." Norwood v. McDonald (1943), 142 Ohio St. 299, paragraph one of the syllabus. This rule was subsequently expanded, however, to embrace not only identical causes of action but, "* * * all claims which were or might have been litigated in a first lawsuit." Grava at 382. (Emphasis in original.)
The exact import of the phrase "claims which * * * might have been litigated" (sometimes written as "could" or "should" have been litigated) has not always been clear. The Supreme Court of Ohio addressed this in Grava. The court, adopting the doctrine of res judicata as stated in 1 Restatement of Laws 2d, Judgments,supra, Sections 24 and 25, ultimately held,
 "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava, syllabus.
However, in Grava and in sections 24 and 25 of the Restatement, the only type of claim preclusion under discussion was whether a plaintiff was barred from pursuing litigation based upon a claim arising out of a transaction which was the subject of a previously adjudicated matter.[2] Grava provides little guidance to us in the application of the doctrine to a defendant's potential claim. Even so, we can infer from the Grava court's stated desire to, "* * * expressly adhere to the modern application of the doctrine of res judicata * * *" found in the Restatement,Grava at 382, that the court would also approve and adopt the restatement's treating of a defendant's claim found in Sections 22 and 23.
These sections provide:
"§ 22. Effect of Failure to Interpose Counterclaim
 "(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
 "(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
 "(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
 "(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."
 "§ 23. Judgment for Plaintiff on Defendant's Counterclaim
 "Where the defendant interposes a claim as a counterclaim and a valid and final judgment is rendered against him on the counterclaim, the rules of bar are applicable of the judgment."
Since we have already determined that the doctrine ofres judicata is applicable to this case, we must now, within the structure of claims preclusion found in Section 22 of the Restatement, determine what, if any, of appellant's claims are precluded by her standing mute in the Michigan independent probate procedure. Specifically, was appellant required to seek court supervision in the independent probate proceeding to raise a compulsory counterclaim or a claim which, if successful, would nullify the "judgment" in the probate proceeding or impair the rights established in that action?
Michigan provides for permissive joinder of counterclaims. Bank of the Commonwealth v. Hulette (1978),82 Mich. App. 442, 444. A compulsory counterclaim arises only when, in a pleading, a party advances a claim against an opposing party. Then all claims arising out of the same transaction or event must be included. Michigan Court Rules, Rule 2.203(A)(B). "A defendant generally has the election of either pleading a counterclaim * * * or preserving it for a future independent suit." Eyde v. CharterTwp. (1982), 118 Mich. App. 43, 52-53. It should also be noted that in Michigan the right of action to set aside an inter vivos
fraudulent conveyance of real property belongs not to the decedent's personal representative, but directly to his or her heirs and devisees. Union Trust Co. v. Kirchberg (1913),174 Mich. 161, 165-166. Similarly, in estates in which there is no deficiency of funds with which to pay creditors, heirs and devisees have an election of remedy to recover the personal property of a decedent obtained by fraud or undue influence.
They may either rely on the personal representative to recover the property at issue, or may maintain a suit against their, "* * * coheirs or codistributees for an accounting, or for purposes of obtaining a distributive share of the estate where the administration has been closed." Powell v. Pennock (1914),181 Mich. 588, 593, cited by 13 Michigan Practice and Pleading, supra, 176-177. Consequently, we must conclude that the claims which appellant now raises were not compulsory counterclaims required to be interposed under Michigan law.
With respect to whether these claims constitute those which would nullify the judgment of the Michigan case or impair the rights established therein, appellant has never attacked the three-way division of the $21,000 pour over trust. Her claims go to property she contends should have been included for such division. They do not in any way touch the Michigan independent probate proceeding.
Because, we conclude that the claims appellant presents in this matter are not subject to preclusion by the doctrine ofres judicata, appellant's single assignment of error is found well-taken.
The judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to said court for further proceedings consistent with this opinion. It is ordered that appellees pay the court costs of this appeal.
JUDGMENT REVERSED.
 Peter M. Handwork, P.J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.
[1] The device most similar is Ohio's release from administration which provides for relaxed court supervision of certain small estates. See R.C. 2113.03, et seq.
[2] The rule states:
 "§ 24. Dimensions of `Claim' for Purposes of Merger or Bar — General Rule Concerning `Splitting'
 "(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
 "(2) What factual grouping constitutes a `transaction', and what groupings constitute a `series', are to be determined pragmati cally, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.
 "§ 25. Exemplifications of General rule Concerning Splitting
 "The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant event though the plaintiff is prepared in the second action
 "(1) To present evidence or grounds or theories of the case not presented in the first action, or
 "(2) To seek remedies or forms of relief not demanded in the first action."